UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) DOCKET NO. 18-10237-WGY |
| | ) |
| | ) |
| JUAN PEGUERO | ) |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant, Juan Peguero, pled guilty on March 7, 2019 to a two-count indictment charging Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956 (a)(1)(B)(i). For the reasons that follow, Mr. Peguero submits that a sentence of 12 months and 1 day followed by a period of supervised release of 3 years is sufficient, but not greater than necessary, to effectuate the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

This federal case is Mr. Peguero's first and only involvement with the criminal justice system both here in the United States and in the country of his birth, the Dominican Republic. His only role in the overall money laundering scheme investigated by the government was the equivalent of that of a "mule" or courier in a drug trafficking operation. He delivered money on two instances to undercover agents at the direction of a shadowy figure the government described as a "money broker". Mr. Peguero certainly recognizes the errors he made in becoming temporarily involved in this very serious criminal activity. His ultimate motivation here was to earn additional money to help support his family. He understands that although he was not personally selling drugs on the street, he was aiding persons that were and bears some responsibility under the circumstances. He truly regrets having been involved in this situation

1

and his biggest fear is leaving his wife and two young children without his financial and emotional support.

I.  **Defendant's Background**

Mr. Peguero is twenty-nine years old.  He was born and raised in Dominican Republic and came to the United States legally in 2009 with the help of his stepfather.  *See* Presentence Report ("PSR") ¶ 58.  He worked to become a naturalized United States citizen and this included an effort to quickly learn the English language by attending classes at Roxbury Community College from 2010 to 2011.  *See* PSR §§ 58, 72.  Mr. Peguero graduated from high school in the Dominican Republic and then focused his efforts on obtaining employment while living here in the United States.

The United States Probation Department has confirmed that Mr. Peguero has maintained steady employment at a number of different jobs from 2014 through the present day.  *See* PSR ¶¶ 73-76.  He obtained specialized training in glazing and refinishing bathtubs and decorative tiles.  *See* PSR ¶ 72.  He perfected his skills to the point where he has trained other people to do the same type of work.  *See* Exhibit A, Letters of Support (Mr. Zayas).  He has also become a valued employee and close friend of his employer.  *Id.*, Letter from Zion Yehoshua.  Most importantly, records obtained from the Commonwealth of Massachusetts Corporations Division confirm that Mr. Peguero utilized all of his training and work experience to start his own subcontracting business, "Peguero's Inc.", in March of 2016.  *Id.*  He runs the business out of his home in Dorchester, Massachusetts.

Aside from his successes at integrating into the United States and his local community as a citizen, maintaining a solid work record, and becoming a small business owner, Mr. Peguero has also started a family.  *See* Exhibit A, Letters of Karla Arias, Jonathan Santana, and Leiron

Perez. He married Zencile Peguero in 2016 and they maintain a loving and supportive relationship. *See* PSR ¶ 64, Exhibit A (Letter of Zencile Peguero). The couple has three-year-old twin boys named Jaiden and Jacob. *Id.* Jaiden was born with only one functioning kidney and has to be monitored regularly by his treating physician at Children's Hospital in Boston. *Id.* Although Mr. Peguero and his wife are always concerned about their son's health, he is currently doing well and does not need to take medication to deal with his condition. *Id.* Maintaining medical care for the family is a huge, and expensive, priority. Although Mrs. Peguero does occasionally work as a driver for Uber, Mr. Peguero is the main source of income for the family. He works tirelessly to provide them support and fell into this money laundering situation not with the intent to enrich himself but to continue to maintain his home and his family's health.

**II.    The Guideline Range Applicable In This Case**

Defendant concurs with the Probation Department's calculation of the currently-applicable guidelines:

- A base offense level of 8 which is raised 12 levels to **20** based upon the total amount of laundered funds ($488, 820), pursuant to §§ 2S1.1(a)(2), 2B1.1(b)(G);

- A **6**-level increase as Mr. Peguero acknowledged during his plea colloquy with the Court that he knew the source of the money was from drug distribution, pursuant to § 2S1.1(b)(1);

- A 2-level increase per § 2S1.1(b)(B) as Mr. Peguero is convicted under 18 USC § 1956(a)(1)(B)(i), rendering an adjusted offense level of **28**

- A **3**-level reduction for acceptance of responsibility pursuant to § 3E1.1, rendering a total offense level of **25**.

Mr. Peguero has no prior record of arrests or convictions placing him in criminal history category I, which results in a guideline range of 57-71 months.[1]

---

[1] During the plea hearing which took place on March 7, 2019, the Court inquired of the government as to its assessment of the guidelines range. The government's reply was that it would be 30-37 months. *See* Exhibit B, pp. 10. This was based upon a base offense level of 8 increased by 12 levels for the amount of laundered funds plus 2

### III. A Sentence Of 12 Months and 1 day followed by 3 Years of Supervised Release Is Appropriate In This Case.  18 U.S.C. § 3553(a).

#### a. Imposing a sentence within the guideline range applicable in this case would result in excessive and disproportionate punishment as it overstates Mr. Peguero's culpability.

The government's offense conduct summary indicates that Mr. Peguero acted as a money courier, or "mule", for an individual who was described as a "Colombian money broker".  Mr. Peguero admitted to having delivered money, at this individual's direction, to undercover law enforcement agents on just two occasions and the aggregate amount of the funds involved was $488, 820.  During his plea colloquy, Mr. Peguero was asked by the Court if he understood that the government was alleging that the source of the laundered funds was from "the illegal drug trade".  *See* Exhibit B, Transcript of Plea Hearing, pp. 6.  Mr. Peguero admitted to having that knowledge but it is also clear from the summary of the government's facts in the PSR that he was a minor player in the scheme and only dealt with delivering money to individuals who would then deposit it into various accounts at the broker's direction.  There is no evidence before the Court that Mr. Peguero created bank accounts or gave information to the undercover about depositing the money in specific ways.  He simply took the money from Point A to Point B and did not ask questions.

---

additional levels as Mr. Peguero was convicted under 18 U.S.C. § 1956(a)(1)(B)(i).  *See* Exhibit B, pp. 9.  The government later told the Court it would be recommending the low end of the cited range, 30 months, at the sentencing hearing.  *See* Exhibit B, pp. 11.  The Court then advised Mr. Peguero that it could sentence him to up to 57 months but that it "will be recommended to me that I do sentence you somewhere between 30 months – that is 2 ½ years , up to 37 months – 3 years and a month, and that's the recommendation, that you'll go to prison somewhere in that range."  *Id*. at pp. 11, 12.  The Court went on to state that Mr. Peguero could "hold" the government to that recommendation given that is what the Assistant United States Attorney represented to the Court.  *Id*. at pp. 12.

Any sentence at or near the low end of the guidelines range in this case (57 months) would be excessive as applied to *this* defendant in the circumstances of *this* case. A variety of traditional grounds for departure/variance support a non-guideline sentence here:

- Mr. Peguero's conduct was aberrational. He has no prior criminal history whatsoever and is a true first offender. He got through his childhood and high school years in the Dominican Republic with no criminal justice involvement and likely would not have wound up becoming involved in this case but for an unfortunate confluence of people and circumstances and, at the critical moment, a very poor choice not to walk away. *See, e.g., United State v. Howe*, 543 F.3d. 128 (3rd Cir. 2008) (variance based on "isolated mistake" in otherwise long and entirely upstanding life); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (defendant was a "law abiding citizen, who [did] an incredibly dumb thing").

- The money laundering guideline includes a substantial enhancement of 6 levels per § 2S1.1(b)(1) based upon the defendant's knowledge that the laundered funds were sourced from drug distribution yet, unlike the drug guideline, fails to account for any minimal or minor role adjustment per § 3B1.2 (a) and (b) in circumstances where it is uncontested that the defendant's involvement is limited to being a lowly money courier who was likely being paid a paltry fee for his/her service.

- Mr. Peguero's unfailing compliance with pretrial release conditions for a lengthy period of time (11 months) during the pendency of this matter and his continued financial and emotional support of his family reflect extraordinary rehabilitation. *See, e.g., United States v. Woodley*, 344 F.Supp. 2d 274, 282 (D. Mass. 2004) (noting that the "touchstone of extraordinary rehabilitation is a fundamental change in attitude"). Whatever minimal ties Mr. Peguero had to the "broker" or other actor in this money laundering scheme were completely severed.

- Given the facts of Mr. Peguero's case, the cross-reference in the money laundering guideline to the loss table in § 2B1.1 makes it vulnerable to the argument that an enhancement tied to a dollar figure he had no control in determining overstates his culpability. *See* § 2B1.1, Application Note 21 (C). The government's evidence indicates that Mr. Peguero only did two deliveries to reach the dollar figure at issue ($488, 820). If it had taken four or five deliveries to reach that amount, it would surely have been evidence of a greater level of involvement on Mr. Peguero's part and thus would be a closer approximation of culpability sufficient to trigger a 12 level enhancement.

Simply put, the guidelines range in this case does not provide helpful "advice" to the Court.

b. **The proposed sentence will provide just punishment and satisfy the § 3553(a) factors.**

The proposed sentence here represents a substantial penalty for Mr. Peguero that adequately reflects the seriousness of the offense of conviction, will promote respect for the law, and provides just punishment as required by section 3553(a). A year and a day in prison is a proverbial "lifetime" for a first offender who has never been in custody. It is a punishment that provides more than adequate specific deterrence to Mr. Peguero on a personal level. This time, away from his wife and young children, is going to be a great emotional and financial hardship for the entire family. Mr. Peguero does not want to put them in that precarious situation again in the future and is not likely to reoffend in this manner going forward.

In terms of general deterrence, a 2004 Sentencing Commission study specifically considered the 24-month recidivism rate for offenders with no prior arrests of any kind. That study found that only 6.8% of offenders with no prior arrests were rearrested within 24 months. U.S.S.C., "Recidivism and the 'First Offender'", p. 14, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf. (May 2004). The reconviction rate for offenders similar to Mr. Peguero was only 2.5%. *Id*.

A 2016 Sentencing Commission study focusing on true first-time offenders suggests that the guidelines sentence applicable in this case (57-71 months) might actually *increase* Mr. Peguero's risk of recidivism. "Recidivism Among Federal Offenders: A Comprehensive Overview," at 18 (2016) ("Recidivism"), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf. A comparison of offenders by length of sentence

6

shows that the lowest rearrest rate was for offenders whose sentence was six months and below. *Id* at 22. That category had a rearrest rate of 37.5%, whereas every other group had a rate between 50% and 56%. *Id*. Offenders sentenced to probationary sentences had an even lower rate, at 35.1%. *Id*. These studies therefore suggest that a lengthy sentence, such as the 57 months suggested by the guidelines here, is likely to make Mr. Peguero a more hardened criminal who is more likely to reoffend.

     Mr. Peguero is a husband, father, friend, citizen, valued employee, and self-made business owner who has accepted responsibility for his actions and is ready for the court to impose an appropriate punishment. All that he asks is that the Court consider the minimal role he played in this situation and, more importantly, his desire not to be away from his wife and his children for too long. They will suffer emotionally and financially every day that he is not available to them. He made a terrible mistake in making these two money deliveries to supplement his income quickly. He has proven that he knows how to live a law-abiding life and will continue to do so when his sentence is completed. The proposed sentence comports with 18 U.S.C. § 3553(a) and it provides Mr. Peguero's best chance at true rehabilitation. It addresses the severity of the offense conduct and serves the best interests of the Mr. Peguero, his family, and the public.

## Conclusion

     For the foregoing reasons, Mr. Peguero respectfully asks the Court to impose a sentence of imprisonment of 12 months and 1 day followed by 3 years of supervised release. This

```
```


disposition will provide punishment that is sufficient, but no greater than necessary, to achieve the statutory purposes of sentencing in this case. *See* 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED,

JUAN PEGUERO
By His Attorney,

*/s/ Oscar Cruz, Jr.*
Oscar Cruz, Jr.
B.B.O. #630813
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

**CERTIFICATE OF SERVICE**

I, Oscar Cruz, Jr., hereby certify that this document was served electronically on all parties as indicated on the Notice of Electronic Filing (NEF) on July 15, 2019.

*/s/ Oscar Cruz, Jr.*
Oscar Cruz, Jr.